# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 20-0239V
UNPUBLISHED

| | |
|---|---|
| MICHELLE HORKY,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: December 7, 2022<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza Vaccine;<br>Shoulder Injury Related to<br>Vaccine Injury (SIRVA) |

*Leigh Finfer*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Ronalda Elnetta Kosh*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION AWARDING DAMAGES**[1]

On March 3, 2020, Michelle Horky filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that she suffered from a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on December 5, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although Ms. Horky has been found entitled to compensation, the parties were unable to agree to damages.

For the reasons discussed below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of $101,287.29, representing $100,000.00 for actual pain and suffering, plus $1,287.29 in unreimbursable expenses.

---

[1] Although this Decision has been deemed unpublished, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet**. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.     Relevant Procedural History

Approximately 19 months after this case was initiated, Respondent filed his Rule 4(c) Report on September 14, 2021, conceding that Petitioner was entitled to compensation. ECF No. 42. A ruling on entitlement was subsequently issued on September 16, 2021. ECF No. 44. On March 11, 2022, Petitioner filed a status report indicating that the parties had reached an impasse. ECF No. 50. The parties therefore filed memoranda setting forth their respective positions on pain and suffering - the only disputed damages element. ECF Nos. 51 ("Br.") and 31 ("Opp."). I proposed that the parties be given the opportunity to argue their positions at a "Motions Day" hearing, at which time I would decide the disputed issues. ECF. No. 53. That hearing was held on December 2, 2022,[3] and the case is now ripe for decision.

## II.    Relevant Medical History

A complete recitation of the facts can be found in the Petition, the parties' respective pre-hearing briefs, and in Respondent's Rule 4(c) Report.

In short, Ms. Horky was 57 years old when she received an influenza vaccine in her left shoulder on December 5, 2018 in Quinton, VA. Ex. 1 at 1. On December 7 and December 12, 2018, she had medical appointments with her primary care physician ("PCP"). Ex. 2 at 20-28. Although the records of those appointments do not contain any mention of shoulder pain, Petitioner explained that she did not mention her pain because she believed, at that time, that it was normal and would resolve. Ex. 4 at ¶5.

On December 18, 2018 (13 days after her vaccination), Ms. Horky returned to her PCP complaining of "constant aching pain in the left upper arm that radiated to the elbow." Ex. 2 at 15. She was prescribed a course of prednisone. *Id.* On January 2, 2019, Petitioner presented to an orthopedist for evaluation. Ex. 3 at 11-12. She rated her pain at 5/10 and was diagnosed with tendinitis. *Id.* Petitioner received her first cortisone injection for pain. *Id*.

From January 15, 2019 through February 5, 2019, Petitioner had three sessions of physical therapy. Ex. 3 at 13-22. At her initial evaluation, Petitioner described her pain as "achy at rest; sharp with movement" ranging from 3/10 to 10/10. *Id.* at 13. At her second and third visits, she reported increasing aching at night. *Id.* at 17, 20.

---

[3] At the end of the hearing held on December 3, 2022, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

2

Petitioner returned to her orthopedist on February 14, 2019 reporting continuing "considerable" pain (5/10) and that PT had made her shoulder worse. Ex. 3 at 23. Her orthopedist suspected a rotator cuff tear and thought additional PT would not be beneficial. *Id.* An MRI performed on February 19, 2019, revealed bursal sided partial thickness tearing of the anterior and mid supraspinatus tendon and small amounts of fluid in the subacromial subdeltoid bursa and glenohumeral joint. Ex. 3 at 45-46.

On March 1, 2019, Petitioner followed up with her orthopedist, still complaining of pain of 4/10. Ex. 3 at 25. She was diagnosed with impingement syndrome of her left shoulder and advised to consider surgery, but opted instead to try a second cortisone injection. *Id.* She returned again on May 14, 2019, reporting that the injection provided relief for approximately six weeks, but that her pain had returned and was 4/10. Ex. 3 at 27. She received a third cortisone injection and was again advised to consider surgery. *Id.*

On June 20, 2019, Petitioner underwent an arthroscopic subacromial decompression of her left shoulder with debridement of her rotator cuff tear. Ex. 3 at 29. She had a post-surgery follow-up on June 28, 2019, where she reported improving pain, but continued trouble sleeping. *Id.* at 30-31. On July 11, 2019, Petitioner returned to her orthopedist reporting ongoing pain in her left shoulder and new similar pain in her right shoulder. Ex. 3 at 32-33. She received cortisone injections to both shoulders and was diagnosed with bilateral shoulder tendinitis with right shoulder impingement. *Id.*

From July 17 - August 2, 2019, Petitioner attended three sessions of physical therapy for her bilateral shoulder pain. Ex. 3 at 34-41. She reported pain between 5/10 (current) and 10/10 (worst) at her initial evaluation. *Id.* at 34. By her final session, she reported that she no longer felt constant pain, although she continued to have difficulty with washing her back, twisting her arm behind her, and with some work-related tasks. *Id.* at 39.

On September 4, 2019, Petitioner had a second MRI of her left shoulder which showed mild tendinopathy of the supraspinatus and infraspinatus with a small, shallow partial-thickness interstitial tear of the mid supraspinatus. Ex. 3 at 46-47. She returned for her final visit to her orthopedist on September 13, 2019 reporting improved left shoulder pain and resolved right shoulder pain. Ex. 3 at 42-43. She had full range of motion and good strength in her left arm and was not taking any medications for pain. *Id.*

Although there are no treatment records filed after September 13, 2019 (approximately nine months from the date of vaccination), Petitioner states that she continued to have difficulties with everyday activities, such as buckling her seatbelt, vacuuming, lifting dishes and sleeping. Ex. 4 at ¶11. She also explained how her injury

affected her ability to do her job as a certified nursing assistant, including forcing her to rely on help from co-workers to lift patients. *Id.* at ¶9.

### III.   The Parties' Arguments

#### A.  Petitioner

Ms. Horky seeks $131,287.29, consisting of $130,000.00 as compensation for her pain and suffering, plus $1,287.29 for past unreimbursable expenses. Br. at 1. The parties agree on the amount requested for out-of-pocket expenses. Opp. at 1.

Petitioner argues that her SIRVA injury was severe and caused her significant pain both prior to and after her surgery. Petitioner's reports of pain fluctuated between 5/10 and 10/10 and caused compensatory pain in her non-injured shoulder, which required a cortisone injection and physical therapy to treat. Petitioner argued at the hearing that she continues to experience disruptions in her life due to her injury, especially at work which requires lifting, and in playing with and caring for her grandchildren.

During the hearing and in her brief, Petitioner discussed prior SIRVA cases that involved injured claimants with similar fact patterns and argued that an award of $130,000.00 in pain and suffering was reasonable and appropriate given that her circumstances were comparable. Br. at 4-6.

#### B.  Respondent

Respondent maintains that a pain and suffering award of $87,500.00 is appropriate. Opp. at 1. Respondent contends that Petitioner's injury was relatively minor, despite the fact that she underwent surgery. *Id.* at 6. Respondent highlights the fact that Petitioner had two medical appointments soon after her vaccination at which she did not mention her shoulder pain as evidence that her pain was not severe in the days after her vaccination. *Id.* at 6-7. Respondent also notes that Petitioner consistently reported moderate levels of pain and recovered significantly after her treatment. *Id.* at 7.

Respondent distinguishes Petitioner's cited prior SIRVA cases, arguing that all three cases involved petitioners who consistently had more severe pain and required more aggressive treatment. Opp. at 10-11. During the hearing and in his brief, Respondent discussed three prior SIRVA cases as the basis for his proposed pain and suffering award. Opp. at 8-10.

### IV.      Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4).

Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which the petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (citing *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.,* 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with that of my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

contemplated that the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. In *Graves*, Judge Merow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). Judge Merow maintained that do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 589-90. Instead, Judge Merow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 593-95. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

## V.    Prior SIRVA Compensation Within SPU[5]

### A.    Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2022, 2,371 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 2,306 of these cases, with the remaining 65 cases dismissed.

Of the compensated cases, 1,339 SPU SIRVA cases involved a prior ruling that petitioner was entitled to compensation. In only 88 of these cases was the amount of damages determined by a special master in a reasoned decision. As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[6]

---

[5] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[6] *See, e.g., Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

1,223 of this subset of post-entitlement determination, compensation-awarding cases, were the product of informal settlement - cases via proffer and 28 cases via stipulation. Although all proposed amounts denote an agreement reached by the parties, those presented by stipulation derive more from compromise than any formal agreement or acknowledgment by Respondent that the settlement sum itself is a fair measure of damages. Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits,* 2020 WL 3729420, at *4 (emphasis in original).

The remaining 967 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Due to the complexity of these settlement discussions, many which involve multiple competing factors, these awards do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

|  | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[7] Agreement** |
|---|---|---|---|---|
| **Total Cases** | 88 | 1,223 | 28 | 967 |
| **Lowest** | $40,757.91 | $25,000.00 | $45,000.00 | $5,000.00 |
| **1st Quartile** | $70,950.73 | $70,000.00 | $90,000.00 | $42,500.00 |
| **Median** | **$95,974.09** | **$90,000.00** | **$122,886.42** | **$60,390.00** |
| **3rd Quartile** | $125,269.46 | $116,662.57 | $161,001.79 | $88,051.88 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

    **B.**    **Pain and Suffering Awards in Reasoned Decisions**

In the 88 SPU SIRVA cases which required a reasoned damages decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00

---

[7] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

to $210,000.00, with $94,000.00 as the median amount. Only five of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[8]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners experienced this greater pain for three months or less. All petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. The duration of the injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive. Only one petitioner provided evidence of an ongoing SIRVA, and it was expected to resolve within the subsequent year.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 95 PT sessions over a duration of more than two years and multiple cortisone injections, was required in these cases. In four cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

### VI.  Appropriate Compensation in this SIRVA Case

#### A. Awareness of Suffering

Awareness of suffering is not typically a disputed issue in cases involving SIRVA – and it does not appear to be herein. Neither party has argued that Ms. Horky lacked awareness of her injury, thus, I find that Petitioner had full awareness of her suffering.

---

[8] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

### B. Severity and Duration of Pain and Suffering

Petitioner's medical records and affidavit describe a moderate SIRVA injury. Petitioner sought treatment quickly after her vaccination (13 days) and consistently reported pain levels between 4/10 and 6/10 prior to her surgery. Ex. 3 at 11, 13, 23, 25, 27. She was prescribed one medication, had three physical therapy treatments, and three cortisone injections prior to her surgery. Ex. 3 at 11, 15, 13-22, 25, 27.

Petitioner underwent successful surgery about six months after her vaccination. Ex. 3 at 29. After her surgery, Petitioner's recovery was excellent. She had three follow-up appointments with her orthopedist, three physical therapy treatments, and one cortisone injection. Ex. 3 at 30, 32, 34-41, 42. At her final appointment, approximately nine months after her vaccination, she reported that she had no pain at rest and was not taking any medication. *Id*. at 42. On exam, she had full range of motion and good strength. *Id*. Petitioner did not seek any treatment for her SIRVA after those nine months.

After reviewing the totality of the record in this case and considering the parties' arguments offered during the hearing, I find that the overall injury, while somewhat moderate, was serious enough to require surgical intervention, and as such justifies an award of at least $100,000. While surgery is one of many factors considered when determining pain and suffering, I have now noted several times that it is a factor that deserves special weight. As the average petitioner will not undergo surgery without substantial consideration, the fact that a petitioner treated a SIRVA injury with surgery is indicative of significant pain and suffering.

Both parties provided reasonable comparable prior SIRVA cases to support their proposed award. Petitioner cited three surgery cases in which claimants were awarded between $125,000 and $127,500 in pain and suffering, but argues that Ms. Horky's injury was "moderately more severe" than in those cases. Br. at 6. However, these cases involve petitioners who consistently reported severe pain, had significantly more physical therapy treatment, both before and after surgery, and required more treatment overall. *See Randazzo v. Sec'y of Health & Human Servs.,* No. 18-1513V, 2021 WL 829572 (Fed. Cl. Spec. Mstr. February 1, 2021); *Rafferty v. Sec'y of Health & Human Servs.*, No. 27-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020); *Nute v. Sec'y of Health & Human Servs.*, No. 18-0140V, 2019 WL 6125008 (Fed. Cl. Spec. Mstr. September 6, 2019).

Respondent also cited three cases, although two did not involve surgery and are therefore less helpful. The third case, by contrast, involved a petitioner who treated her SIRVA injury with surgery, but was awarded $97,500 in pain and suffering. *Shelton v. Sec'y of Health & Human Servs.*, No. 19-0279V, 2021 WL 250093, *8-9 (Fed. Cl. Spec.

Mstr. May 21, 2021). The *Shelton* petitioner also had three cortisone injections and 26 physical therapy treatments over a two-year period. *Id.* However, there is a special factor specific to *Shelton* not relevant to this case. There, the petitioner had a significant delay in starting treatment (approximately five months), suggesting that she was able to tolerate her pain for a significant period of time prior to treating. *Id.* at *7. Because of that fact, the pain and suffering award in *Shelton* was lower than it would have been absent the delay. There is no such delay in seeking initial treatment here (Ms. Horky sought treatment within two weeks of her vaccination), and Respondent has not provided evidence of the type of unique circumstances that would support a reduction comparable to *Shelton*.

In addition to the parties' proposed comparable cases, I deem the present action to be factually similar to another recent case: *Hunt v. Sec'y of Health & Human Servs.*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022). In *Hunt*, the petitioner obtained medical treatment for other matters a few days after her vaccination, but did not mention any shoulder pain. *Id.* at *6. She then sought treatment specific to the SIRVA approximately three weeks after her vaccination, received four cortisone injections (two before and two after surgery), and had physical therapy both before and after surgery. *Id.* at *8-9. She had a successful surgery about six months after vaccination, with a good post-surgical recovery. *Id.* at *9. The *Hunt* petitioner was awarded $95,000 in pain and suffering. *Id.* at *10.

The degree of factual similarity between the treatment course of the *Hunt* petitioner and Ms. Horky's experience suggest an award of pain and suffering in the same range. However, my award will be somewhat higher, because the *Hunt* petitioner enjoyed significant periods of little-to-no pain after her cortisone injections during her 15 months of treatment, while Ms. Horky consistently reported persistent pain, while experiencing only some improvement from her injections. *See Hunt*, 2022 WL 2826662 at *9; Ex. 3 at 23 (some relief, but still considerable pain"); 25 (second injection given); 27 (third injection given only two months later); 29 (surgery performed only one month after injection).

Under such circumstances, and considering the arguments presented by both parties at the hearing, a review of the cited cases, I find that **$100,000.00** in compensation for past pain and suffering is reasonable and appropriate in this case.

### C.    Award for Past Unreimbursed Expenses

Petitioner requests $1,287.29 in past unreimbursable expenses. Br. at 7. Respondent does not dispute this sum, and therefore Petitioner is awarded this sum without adjustment.

## CONCLUSION

In light of all of the above, the I award **Petitioner a lump sum payment of $101,287.29,** (representing $100,000.00 for Petitioner's actual pain and suffering and $1,287.29 for unreimbursable medical expenses) **in the form of a check payable to Petitioner, Michelle Horky.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[9]

**IT IS SO ORDERED.**

                                                       **s/Brian H. Corcoran**
                                                     Brian H. Corcoran
                                                     Chief Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.